[No. 23594. Department One. January 4, 1933.]

ARTHUR E. CARR, as *Guardian of the Estate of Sarah E.
Molden, Incompetent, Respondent,* v. ALPHRETTA· E.
HAMLIN *et al., Appellants.*[1]

*Allen & Walthew,* for appellants.

*O. H. Carpenter* and *Arthur Collett, Jr.,* for respondent.

TOLMAN, C. J.—This appeal is from a judgment entered by the court below after a trial on the merits, without a jury, in three separate actions, which were consolidated and tried as one. The first action was commenced by Sarah E. Molden, as plaintiff, on September 28, 1927, seeking the cancellation of deeds exe-

[1]Reported in 18 P. (2d) 17.

cuted by her conveying certain real property to the appellant Alphretta E. Hamlin, on the ground that they were procured by fraud, overreaching, and without consideration. Also, an accounting was sought as to the income and profits arising from the real estate involved.

The case was not brought to trial for a considerable time, and on April 2, 1930, respondent, Carr, was appointed guardian of the estate of Sarah E. Molden, she then being adjudged to be an incompetent person. Respondent, Carr, thereafter was substituted as party plaintiff in that case, and filed an amended complaint, upon which issues were joined. Shortly following his appointment, respondent, Carr, as guardian, brought two additional actions against the appellants, one to set aside a transfer of stock in a building and loan company which had been assigned by Mrs. Molden to Mrs. Hamlin, and the other to set aside a like transfer of another piece of real estate. In these last two actions, in addition to charges of fraud, lack of consideration and the like, it was alleged that the defendants had procured these transfers from Mrs. Molden when she was of unsound mind and incompetent to manage and transact her business affairs, all of which was well known to the defendants.

After a trial lasting many days, in which apparently each side produced all available evidence in any wise bearing upon the issues, the trial court prepared and filed an exhaustive memorandum opinion, from which we quote enough to show the theory upon which he rendered judgment.

"I am more perplexed over the relief to be granted than I am over any of the disputed facts in the case. It seems to me an accounting in this case is well nigh impossible. Mrs. Molden is incompetent to offer any testimony. All records or data appear to be, if not in evidence, under the control of the defendant. An ac-

counting would require a long period of time and, in my judgment, bring but little reliable results. Under the general prayer for relief, I think the court has a right to enter judgment for damages, and thus end the question of relief to be granted. I feel satisfied the market value of Mrs. Molden's equity in the Summit avenue property on January 8, 1928, was $9,500, which is the amount Mrs. Molden was damaged by the defendant in that transaction, but Mrs. Hamlin is entitled to a credit in the amount of the two notes which I find she indorsed for Mrs. Molden and paid to Claflin, totaling $500, which should be deducted, leaving a balance due Mrs. Molden at that time of $9,000. From this should likewise be deducted $150 which Mrs. Hamlin paid Dr. Irwin, leaving a balance of $8,850, with interest since said date. Having found there was no sale, I am not able to credit the $1,000 which Mrs. Hamlin says she paid upon the deed. What that was paid for I do not know, but I cannot believe it was on the purchase price of this property.

"Now touching the other two cases, one involving the assignment of a certificate of insurance and the other the assignment of a real estate contract: Both were made at the same time. Mrs. Hamlin is entitled to some credits for moneys paid since those assignments, but I cannot tell how much should be credited in one case and how much in the other, but it is plain that she is entitled to a certain sum as credits. I therefore consolidate these two actions and direct that one judgment be entered in favor of the guardian for damages. The value of the equity of Mrs. Molden in the real estate contract at the time of the assignment was $1,125. The value of the certificate of insurance at the date of assignment was $3,295.08, from which should be deducted $300, a loan which Mrs. Molden had against it, leaving the net worth of said certificate of insurance at the date of assignment the sum of $2,295.08. Hence, the net value of Mrs. Molden's interest in the certificate of insurance and in the real estate contract, subject of the last two actions, equaled the sum of $2,295.08 plus $1,125, or a total of $4,120.08. Against this, Mrs. Hamlin is entitled to credit for maintenance and care of Mrs. Molden since October 9, 1929,

in the sum of $50 a month, plus such further sum, if any, as she paid to Dr. Thomas. The balance will be the amount of the judgment which plaintiff should recover against the defendants on account of the transactions covering the last two cases.''

Since this appeal was taken, Mrs. Molden has died, her will has been admitted to probate, the executors have qualified, and on motion have been substituted as respondents herein.

■ Because of the vast amount of evidence introduced and the multiplicity of major and minor issues, we cannot undertake to make a further statement of the facts, and see no good purpose to be served by a detailed discussion of them. It is sufficient to say that we find nothing in the case save questions of fact. By patient and laborious study of the abstract, with frequent excursions into the several volumes comprising the statement of facts for greater light, we have so far familiarized ourselves with the evidence as to be able to say with confidence that not only does it not preponderate against the findings of the trial court upon all of the major and fundamental issues, but it so strongly supports those findings as to leave no doubt in our minds.

■ Appellants complain very earnestly of the refusal of their request, based upon a showing, to reopen the case after the court's memorandum decision had been handed down, for the purpose of receiving further evidence upon a number of points chiefly affecting the accounting between the parties. We have considered the showing as made in connection with the whole case, and in the light of the theories of each side, together with the announced reasons of the trial court for denying the application, we can see no error therein, unless it be with reference to the $1,000 check hereinafter referred to.

The transfer of the property attacked in the suit first brought by Mrs. Molden herself was made on January 8, 1926, and we think the trial court rightly found that there was no such sale based upon a consideration as appellants maintained and sought to prove. There was, in fact, a transfer of the legal title from Mrs. Molden to Mrs. Hamlin, induced by fraud and over-persuasion exercised upon a grantor who was physically and mentally weak and in a condition to be easily dominated and controlled by one possessed of her confidence. That the grantee so possessed the confidence of the grantor, and so persuaded and induced her to make the conveyance without consideration, we do not doubt.

But six months later, the grantee placed a new mortgage for $10,000 on the property to take up an existing mortgage of some $5,500 not yet due, and after payment of the existing mortgage and the expenses attendant upon making the new loan, she received in cash from the proceeds of the new $10,000 mortgage the sum of $4,098. As the new mortgage was dated July 12, 1926, and as there was some delay in perfecting the title and closing the matter, it may very well be that the cash over-plus arising from this transaction was not received by Mrs. Hamlin until somewhere about August 1, 1926.

On August 4, 1926, Mrs. Hamlin made and delivered to Mrs. Molden her check on Queen City Bank of Seattle for $1,000. This check bears the endorsement, "Mrs. S. E. Molden," and she undoubtedly received the proceeds in money or as a credit to her account in her own bank. Mrs. Hamlin testified that this $1,000 so paid was the balance of the cash payment to be made on the purchase price of the property according to the understanding existing between her and Mrs. Molden. The trial court thought not, and we think not.

But without any further enlightenment than now appears, may it not well be, since Mrs. Molden had by this transfer stripped herself of most of her property (even though the transfers attacked in the second and third actions had not yet been made), and the property which remained to her having little if any income-producing qualities, that, under this situation, Mrs. Hamlin probably foresaw that, unless money was provided to carry Mrs. Molden along for a time and provide for her current expenses, there would be a speedy revelation of the situation to Mrs. Molden's relatives and other friends which might bring about litigation and restitution; and, if so, might she not consider it wise, out of the $4,000 plus in cash obtained on property which had cost her nothing, to make some provision for Mrs. Molden which would avoid or delay revelation of the stripping which had taken place?

In her own interest and for her own safety, and in view of Mrs. Molden's rapidly declining health, it would seem a wise course to pursue, and since Mrs. Molden continued to write checks for her current needs for several years thereafter, may not this $1,000 have been the fund, in part at least, upon which those checks were drawn?

It is possible, even yet, that such records exist in the bank upon which Mrs. Molden checked as will show the state of the account before and after the date of this check, and establish with some certainty whether or not she actually received the proceeds and applied them to her own use, and why the check was given to her.

As the record now stands, there is no basis for an inference that this $1,000 was paid to Mrs. Molden for any reason other than the one we have suggested; and whatever the reason, if the money was actually paid to Mrs. Molden and used by her and was not paid

in satisfaction of some pre-existing debt, it would seem that equity would demand that credit should be given for the payment.

We conclude, therefore, that the judgment in the first case should be modified by reducing it in the sum of $1,000, unless within thirty days of the going down of the remittitur the respondents shall consent to a reopening of the case on this one particular issue and none other. In all other respects, the judgments are affirmed.

Remanded for further proceedings as herein specified.

HOLCOMB, MITCHELL, PARKER, and MILLARD, JJ., concur.